AMERICAN FOUNDRY COMPANY *v.* CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY.

[No. 13,839. Filed November 3, 1931. Rehearing denied May 19, 1932. Transfer denied April 26, 1934. Petition to reconsider dismissed March 12, 1935.]

*A. B. Cronk,* for appellant.

*W. L. Taylor, J. T. Markey, W. J. Stevenson,* and *B. G. Stackhouse,* for appellee.

*John D. Welman, Frank L. Littleton, James M. Ogden,* Attorney-General, *George W. Hufsmith,* Assistant Attorney-General, *James W. Noel, Hubert Hickman, Alan W. Boyd,* and *Robert D. Armstrong, amici curiae.*

CURTIS, J.—On September 17, 1928, the appellant filed its complaint in the Marion Superior Court against the appellees, asking a judgment for damages together with attorneys fees and costs growing out of an award of reparation made by the Public Service Commission of the state of Indiana in a hearing before it on the

petition of the appellant filed March 24, 1926. The complaint is voluminous, covering approximately 31 pages of the appellant's brief. It discloses that on March 24, 1926, appellant filed with the Public Service Commission of Indiana a petition naming appellee railroad companies as defendants, in which petition it was averred that the carload freight rate of $1.64 per ton, charged by appellees for transporting sand from Michigan City to Indianapolis, was, and in the future would be, unjust and unreasonable and violative of the laws of this State; that a reasonable rate would be $1.26 per ton; that for a period of two years last past appellant had been compelled to pay the unjust and unreasonable rate to its damage in a sum equal to the rate in excess of $1.26; prayer that the Public Service Commission prescribe a reasonable rate for the freight in question and award to the appellant the damages sustained by it by reason of the payment of the unlawful charges during the two years previous. After the filing of the petition, appellees each voluntarily reduced the freight rate from $1.64 per ton to $1.39. Appellant thereupon filed a supplemental petition in which it was charged that the rate of $1.39 was also unreasonable and unjust, and in which substantially the same relief was asked.

At a hearing of the cause, October 7, 1927, the commission granted the relief sought, as far as fixing the rate was concerned, and established the rate to be charged at $1.26 per ton, but denied without prejudice appellant's prayer for damages on account of the freight paid under the rate found by the Commission to be unfair and unjust. Appellant filed its motion for a modification of the order, and this motion was granted by the Commission, which made a modified order making a finding as to the damages sustained by appellant through the payment of the unjust rate, and fixing the damages to be paid by appellee, Chicago, Indianapolis &

Louisville Railway Co. at $108.24 and by the New York, Chicago & St. Louis Railroad Co. at $3,175.18, to be paid on or before July 25, 1928. Whereupon, the railway companies each refused to pay the damages awarded, and this cause was commenced by appellant to recover damages and attorney fees.

The complaint is based upon section two of the act of March 15, 1913 (Acts 1913, p. 740, ch. 273; section 12854, Burns R. S. 1926, §55-1406, Burns 1933, §11473, Baldwin's 1934) and seeks to enforce by appropriate judgment the award of reparation made by the Public Service Commission in the hearing had before it in the matter hereinbefore set forth. The appellees demurred separately to the complaint for the want of sufficient facts, thereby raising the question of the power of the Commission to award to the shippers damages that arose from the payment of freight rates which the Commission subsequently found to be unreasonable and unlawful. These demurrers were sustained and the appellant having refused to plead further, judgment was rendered for the appellees. From the rulings of the trial court upon these separate demurrers the appellant appealed to this court and has assigned as error this action of the court.

It is not contended by the appellant that its cause of action in the instant case is based upon or attempts to state a common law cause of action. We are therefore not called upon to decide in this case whether or not such a cause of action could be brought by the appellant. We are only concerned in this case with a determination of the question as to whether or not the appellant has stated a cause of action in its complaint against the appellees under the statutes of this state. The question presented is: In a proceeding before the Public Service Commission by a shipper against a carrier for the investigation and establishment of freight

rates and for damages in which proceeding the Commission finds that the rate complained of is unreasonable and unlawful and that the complaining shipper had, for a certain period of time, been paying such unlawful rate, has the Commission the power to award to the shipper damages sustained by him by reason of the unlawful rate so paid?

The statutes pertinent to this appeal are as follows: Section 12808, Burns 1926, §55-101, Burns 1933, §14449, Baldwin's 1934. "The power and the authority is hereby vested in the Railroad Commission of Indiana, and it is hereby made its duty, as hereinafter provided, · . . . to correct abuses and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads . . . (b) . . . fix and establish for all or any connecting lines of railroads in this State reasonable joint rates of freight, transfer and switching charges for the various classes of freight and cars that may pass over two or more lines of such railroads. (d) . . . from time to time, to alter, change, amend or abolish any classifications or rates . . . whenever found to be unjust, unreasonable or discriminative, and to make and substitute . . . amended, altered or new classifications or rates, which shall be put into effect by said railroad company or companies, . . . (h) The provisions of this section shall be construed to mean that the power of said commission extends to any case where any person, . . . complain of anything done, or omitted to be done by any common carrier subject to the provisions of this act, and shall apply to said commission by petition, which shall briefly state the facts; whereupon a statement of the charges thus made shall be forwarded by the commission to such common carrier, who shall be called upon to satisfy the complaint, or to answer same in writing within a reasonable time to be

specified by the commission . . . And said commission shall have the power, after such investigation to make such corrections, alterations, changes or new rules or regulations or rates as may be necessary to prevent injustice or discrimination to the party complaining or to any other person, firm or corporation; Provided, That when any rate, charge, classification, rule or regulation shall have been so made, changed, modified, or added to by said commission, such order shall operate for the benefit of all persons or corporations situated similarly with said complaining party. (n) All railroad companies doing business in this state shall, upon the demand of any person or persons interested, establish reasonable joint rates for the transportation of freight between points upon respective lines within this State . . ." Section 12820, Burns 1926, §55-113, Burns 1933, §14453, Baldwin's 1934. "(a) In addition to the authority vested in the commission to determine what shall be just, reasonable and indiscriminative rates for further observance, upon complaint filed as provided in this act, such commission, whenever it is of the opinion that the rates . . . or any part thereof, are excessive or unjust, or discriminative, or unduly prejudicial or in violation of the laws of this State, shall have authority to, and it is hereby made the duty of such commission to investigate the same, . . . And said commission shall have power after such investigation, to make such corrections, alterations, changes or new rules or regulations or rates as may be necessary to prevent injustice or discrimination.

"(b) In addition to the power and authority given to said commission . . . as provided in this section, said commission, as an additional remedy, is also given power and authority, upon complaint filed by any person . . . to enter an order requiring any such carrier to comply with the duty, obligations and require-

ments of this Act, and all other laws of the State concerning the duties, obligations and requirements of such carriers in the performance of their duties to the public as common carriers." Section 12828. "If any railroad subject hereto, directly or indirectly, . . . shall charge, demand, collect or receive from any person, firm or corporation, a greater or less compensation for any service rendered or to be rendered by it, than it charges, demands, collects or receives from any other person, firm or corporation, for doing a like and contemporaneous service in the transportation of a like kind of traffic, under substantially similar circumstances and conditions, such railroad shall be deemed guilty of unjust discrimination, which is hereby prohibited." Section 12830. "In case any railroad company subject to this act shall do, cause to be done, or permit to be done, any matter, act, or thing in this act prohibited, or declared to be unlawful, or shall omit to do any act, matter or thing herein required to be done by it, such railroad company shall be liable to the person or persons, firm or corporation injured thereby for the damages sustained in consequence of such violation." . . . The above are found in the Railroad Commission Act of 1905 as amended. The following are found in the Reparation Act of 1913 (Acts 1913, page 739). Section 12853, Burns 1926, §55-1405, Burns 1933, §14472, Baldwin's 1934. "If, after hearing on a complaint or petition filed with the Railroad Commission of Indiana, the Commission shall determine that any party complainant is entitled to an award of damages for the violation of any of the provisions of the laws of this State prescribing the duties and powers of the Commission, the Commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named, and stating the sum; but no such order shall be made in a case wherein

the carrier has theretofore made reparation to such complainant for the injury alleged to have been done."

Section 12854, Burns 1926, §55-1406, Burns 1933, §14473, Baldwin's 1934. "If a carrier does not comply with an order for the payment of money within the time limit in such order, the complaint (complainant), or any other person for whose benefit such order was made, may file in the circuit or superior court of any county into or through which the road of the carrier runs a complaint setting forth briefly the causes for which he claims damages and the order of the Commission in the premises. Such suit shall proceed in all respects like other civil suits for damages, except that, on the trial of such suit, the findings and the order of the Commission shall be prima facie evidence of the facts therein stated, and except that the complaint (complainant), if he shall finally prevail, shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. No proof of the finding and order of the Commission shall be required unless the allegations in the complaint concerning the same are especially denied by a pleading under oath."

Section 12855, Burns 1926, §55-1407, Burns 1933, §14474, Baldwin's 1934. "All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after; and a complaint for the enforcement of an order for the payment of money shall be filed in court within one year from the date of the order, and not after."

Section 12857, Burns 1926, §55-1409, Burns 1933, §14476, Baldwin's 1934. "The provisions of this act shall be cumulative of all other rights and remedies of the parties, and of all other powers of the railroad commission."

It is to be noted that section 12853, *supra*, contains this language "but no such order shall be made in a

case wherein the carrier has heretofore made reparation to such complainant for the injury alleged to have been done." What does this language mean? Construing it in the light of the facts of the instant case we think it means that if the appellees had, previously to the making of the final order in the hearing before the Commission, made reparation to the appellant for the damages complained of by the appellant in its proceeding before the Commission, then and in that event, no order such as was made by the Commission, could have been made. There would then have been no basis for the order of reparation. This language is strongly persuasive of the meaning of the act in its entirety. If, as contended for by the appellees, the only order of reparation that can be made under the statute is when the carrier has violated some duty or power of the commission, (In which event it is difficult or impossible to see how the shipper could be injured) then the language of the statute above quoted is entirely meaningless. We are aware that the Public Service Commission possesses only such powers as are conferred upon it by the statute. It was created by an act of the General Assembly, approved March 4, 1913, Acts of 1913, p. 167. This act provided that the rights and duties conferred by law on the Railroad Commission were continued in force and transferred to the Public Service Commission, and the Railroad Commission was abolished. We then must look to the entire law of this State applicable consisting of the Railroad Commission Act of 1905 as amended and as supplemented by the act of March 4, 1913, *supra,* and to the Act of March 15, 1913 (Acts of 1913, p. 739) in determining the question presented in this appeal. While the Railroad Commission Act prescribed the powers and duties of the Commission, prohibited unreasonable rates, imposed a liability therefor, and provided a

remedy, it did not expressly provide, as does section 16 of the Interstate Commerce Act, that the Commission might make an order for the payment of the money, nor did it provide for the necessary court procedure to enforce such an order. This omission was corrected by the enactment of the Reparation Act of 1913 (sections 12853-12857, Burns 1926), which paraphrases almost word for word section 16 of the Interstate Commerce Act and expressly provides for an order of reparation. In our opinion this act completes the legislation necessary to permit an order of reparation in cases like the .instant case. Our legislation is now similar to the Interstate Commerce Act and gives the Commission practically the same powers with respect to intrastate shipments as has the Interstate Commerce Commission with respect to interstate shipments. Under the Interstate Commerce Act the Interstate Commerce Commission has in a great many instances awarded reparation in cases similar to the instant case, and in the courts it has been repeatedly held to have the power to award such reparation. Since the provisions of the Interstate Commerce Act are in many respects similar to our Railroad Commission Act as amended and as supplemented by the Reparation Act of 1913, we have been influenced in our opinion by the cases holding that the Interstate Commerce Commission under the legislation referred to has the power and authority to make an award of reparation. See: *Southern Pacific Company et al.* v. *Darnell-Taenzer Lumber Company et al* (1918), 245 U. S. 531, 62 L. Ed. 451, and cases cited therein.

The appellees say in effect that the Commission cannot award reparation for damages caused by a violation of the Railroad Commission Act of 1905 as amended and supplemented unless the provision violated is one which prescribes a duty or power of the

Commission. How a carrier could violate a provision which lays no duty upon it but someone else, or what conceivable purpose the legislature could have had in providing for an award of reparation for an impossible act is not made clear by the appellees. The only theory offered by the appellees is that the legislature either had no intent in mind or that it had in mind an absurd intent in the Reparation Act of 1913.

We cannot attribute such absurdities to the legislative mind, nor does the language of the legislature make them necessary. The Act says that the Commission shall make a money- order if it shall find that a complainant is entitled to an award of damages for the violation of any of the provisions of—What?—"the laws of this State prescribing the duties and powers of the Commission." What are the laws of this State prescribing the duties and powers of the Commission? Obviously the Railroad Commission Act of 1905, as amended and supplemented, the very Act we are considering. What provision of that Act will, if violated, render a carrier liable to such a money order? Why, obviously, "any of the provisions" of that Act which the carrier may have violated and from the violation of which damage can flow to the complainant. The language of the Reparation Act says in effect that if a violation of any provision of the Railroad Commission Act as amended and supplemented has caused damage to the complainant, he shall be entitled to an award of damages. Charging an unreasonable rate is a violation of the letter and spirit of that Act, and necessarily causes damage to the shipper paying it. *Southern Pacific Company* v. *Darnell-Taenzer Company, supra.* There is no difficulty in tying in sections 12853 to 12857 inclusive (The Reparation Act of 1913) with sections 12808, 12820, and 12828 as the corresponding sections

of the Interstate Commerce Act are tied in with each other.

It is not a question of strict or liberal construction of the Reparation Act of 1913, but rather a question of whether the plain words of the statute shall be given any meaning whatever. The Reparation Act of 1913 contemplates that a carrier may violate some provision of law and thereby become liable to a shipper. What provision of what law? The Act provides for an award of damages, "for the violation of any of the provisions of the laws of this State prescribing the duties and powers of the Commission." To avoid giving the Commission general jurisdiction of all causes of action against carriers, including personal injury, property damage and other cases, the Reparation Act of 1913 provides that the law violated must be a law which prescribes the duties and powers of the Commission. In other words, the subject matter of the Reparation Act of 1913 is confined to rates, service, and similar matters of the character with which the Commission is created by law to deal. There are various laws prescribing the duties and powers of the Commission, chiefly the Railroad Commission Act, as amended and supplemented. Any law which prescribes such duties or powers is referred to by the above language. Each of those laws contains numerous provisions, some prescribing duties and powers of the Commission, some prescribing duties of carriers towards shippers. To what "provisions" of such laws does the Reparation Act of 1913 refer? In the express language of the statute, it is "any of the provisions" of such laws. Thus, the express language of the statute contemplates that the Commission may enter a reparation order for any damages sustained by violation of any provision of whatever kind, contained in a law prescribing the duties and powers of the Commission. The clause: "pre-

scribing the duties and powers of the Commission" modifies the word: "laws" and not the word: "provisions." It immediately follows the word: "laws," and is separated from the word: "provisions" by five words including the word: "laws" itself. Moreover, the context and the meaning of the sentence so demand. It seems to us that this is as clear as language can make it, especially since the construction contended for by appellees would, as they expressly admit, deprive the Reparation Act of 1913 of any meaning whatever.

The Reparation Act of 1913 (*supra*) contains but five clauses, four of which have been set out in full in this opinion. The omitted clause deals only with who are proper parties, joinder, service of process and judgment in the court procedure provided for the enforcement of the reparation order. This Act deals only with damages (reparation) and the method of enforcement of a reparation order when made, and nothing else. If the construction contended for by the appellees is placed upon this Act then it is entirely meaningless or it is absurd. No such construction is called for.

It is contended by the appellees that the giving of the power to the Commission to make an order of reparation, is equivalent to conferring upon the Commission judicial powers. There is nothing in this contention. The Act provides that if the carrier fails to comply with the order of the Commission for the payment of money, then suit can be commenced in court by filing a complaint setting forth briefly the causes for which the complainant claims damages and the order of the Commission in the premises. The said suit shall proceed in all respects like other civil suits for damages except on the trial of such suit, the findings and order of the Commission shall be *prima facie* evidence of the facts stated therein. In passing upon and upholding section 16 of the Inter-

state Commerce Act, which is almost identical with the Reparation Act of 1913 (*supra*), the Supreme Court of the United States in the case of *Meeker* v. *Lehigh Valley Railroad Company* (1915), 236 U. S. Supreme Court Reports, p. 412-431, said of this provision: "This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all issues, and takes no question of fact from the court or jury. At most, therefore it is merely a rule of evidence."

As we view the record in this case, it is not necessary for us to determine whether or not the Railroad Commission Act as amended and supplemented covers single line shipments. We are of the opinion that under the facts disclosed in the complaint in this case a cause of action was stated by the appellant against the appellees and that the trial court erred in sustaining the demurrers thereto. For this error the judgment is reversed with directions to the trial court to overrule the demurrers addressed to the complaint and for further proceedings not inconsistent with this opinion. Reversed.