129 Ind. App. 175 (1958)
155 N.E.2d 149
BOONE COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION ET AL.
v.
PUBLIC SERVICE COMMISSION OF INDIANA ET AL.
No. 19,184.
Court of Appeals of Indiana.
Filed December 22, 1958.
*176 Davis, Hartsock & Wright, H.B. Hartsock, of Indianapolis, *177 Parr, Parr & Parr, and W.H. Parr, Jr., of Lebanon, for appellants.
Shake & Shake, and Gilbert Shake, of Vincennes, for appellant Knox Co. REMC.
William Wolf, of Greenfield, for appellant Hancock Co. REMC.
Claud Raber, of Danville, for appellant Hendricks Co. REMC.
James F. Griggs, of Franklin for appellant Johnson Co. REMC.
Hugh Couch, of Martinsville, for appellant Morgan Co. REMC.
Ewing Wright, of Osgood, for appellant Southeastern Indiana REMC.
Edwin K. Steers, Attorney General, and Frank Spencer, Deputy Attorney General, for appellee.
COOPER, J.
This is an appeal and/or (for a judicial review) of an order by the Public Service Commission of Indiana, wherein said Commission entered "Ex Parte Order No. 27605," said order bearing the approval date of March 7, 1958. The pertinent part of said "Ex Parte Order" as far as this judicial review, pursuant to chapter 189, Acts of the General Assembly, 1957, is concerned, reads as follows:
"The Public Service Commission of Indiana (sometimes hereinafter referred to as `the Commission') having before it the information that prior to this date the majority, if not all, of the loans heretofore made by the United States Government through its Rural Electrification Administration (hereinafter sometimes referred to as `the REA') to corporations operating in Indiana under the Indiana Rural Electric Membership Corporation Act of 1935, as amended (hereinafter sometimes referred to as `REMCs') were made without any approval or authority from this Commission having been sought or granted; and *178 the Commission being duly advised in the premises of the opinion and now finds:
"The Commission should act under its general powers conferred upon it by the Legislature to administer the Public Service Commission Act and all other acts pertaining to businesses affected with a public interest which come under the jurisdiction of the Public Service Commission of Indiana, and should make a ruling as to the status of loans heretofore made and/or approved by the REA to REMCs in Indiana, and the Commission further should state its policy with regard to such loans from the REA as may be sought by the REMCs in the future.
.....
"The Commission has taken the position that corporations organized under the Indiana Rural Electric Membership Corporation Act of 1935, as amended, are public utilities (as declared by the Supreme Court of Indiana in the case of Kosciusko County REMC v. Public Service Commission of Indiana and the Northern Indiana Public Service Company  1947  225 Ind. 666, and as defined by the Public Service Commission Act, Burns' Ind. Stats. Ann. 54-105); and that the Public Service Commission Act shall apply to REMCs where said Act is not in conflict with the REMC Act; that as to the matter of securing permission from the Commission before incurring indebtedness and issuing evidence of indebtedness therefor, there is no conflict between the two Acts  upon silence of the REMC Act, the Public Service Commission Act applies; and since the Public Service Commission Act provides, as set forth in Burns' Ind. Stats. Ann. 54-503, 54-505 and 54-510, and other applicable sections, that no public utility shall encumber its used or useful property or business, or any part thereof, without the approval of the Public Service Commission, approval from this Commission should have been obtained before any indebtedness was incurred, and evidence of indebtedness issued therefor.
"The Commission finds that since the Commission had knowledge of the fact that loans were *179 being made through the REA to REMCs within the State of Indiana since shortly after the passage of the REMC Act in 1935, and this Commission did not then, and has not at any time prior to this date, taken affirmative steps to enforce provisions of the law which would require the obtaining of authority from this Commission by REMCs on the same basis upon which other public utilities are required to obtain authority before incurring any indebtedness and issuing evidence of indebtedness therefor; and since there may have been some confusion as to the effect of the provisions of the REMC Act prior to the pronouncement of the Supreme Court of Indiana in 1947 in the Kosciusko case hereinabove referred to, which unequivocally declared that REMCs are public utilities in Indiana, it can only fairly be said that the REMCs acted in good faith in obtaining loans from the United States Government through the REA without first having obtained authority from this Commission to incur the indebtedness and to issue evidence of indebtedness therefor; and further, it can only be said that United States Government through the REA acted in good faith in making said loans without a showing that the authority of this Commission had first been obtained by the REMC before the application for the loan was made in that it had no official knowledge of the fact that under the law of Indiana such authority from this Commission was necessary.
"While this Commission cannot now, retroactively and without hearings, authorize and approve the loans which have heretofore been made, and/or authorized, by the REA, as hereinbefore set out, the Commission can, and hereby does, rule that said loans shall not be considered and treated by this Commission as having been made unlawfully, and no penalty shall be levied by reason of the making of said loans; further, that the loans heretofore approved by the REA on which the full amount has not as yet been advanced to the REMC borrower, shall be treated by this Commission as loans already made and consummated, and shall be treated by this Commission *180 as being in the non-penalty category, but only to the extent of the loans itemized and set forth heretofore in this order; and no immunity shall attach to any loan applications now on file with, or pending, before the REA which were not approved prior to February 20, 1958, and are not set forth hereinbefore in this order.
"The Commission further finds and hereby declares that as a matter of policy, corporations, organized and/or operating, within the State of Indiana under the Indiana Rural Electric Membership Corporation Act, as amended, must first obtain authority from this Commission before incurring any indebtedness and issuing evidence of indebtedness therefor, including the obtaining of loans from the United States Government through its Rural Electrification Administration, in the same manner in which other public utilities must obtain authority from this Commission under the Public Service Commission Act, and a failure to do so in the future on any loan which has not heretofore been approved by the REA and which is not set forth hereinbefore in this order will be considered by this Commission as a violation of the law. Since the federal law authorizing the Rural Electrification Administration provides that no loan shall be made unless the state authority having jurisdiction in the premises is first obtained, it is anticipated that in view of this official statement of the jurisdiction of the Public Service Commission of Indiana and this declaration of policy as set forth in this order, the REA will acquiesce in this policy as to all loan applications not approved prior to February 20, 1958, and set forth hereinbefore in this order by requiring evidence of authority from this Commission to incur indebtedness, issue evidence of indebtedness therefor and encumber useful plant, property or business before approving any loan to any corporation organized and/or operating within the State of Indiana and coming under the jurisdiction of the Indiana Public Service Commission, including, but without limiting the generality thereof, REMCs.
"Some reference should here be made to three previous orders of this Commission, to-wit: Cause *181 No. 27395 In The Matter of The Joint Petition of Public Service Company of Indiana, Inc., and Johnson County Rural Electric Membership Corporation, approved January 31, 1958; Cause No. 27336 In The Matter of The Joint Petition of Public Service Company of Indiana, Inc., and Southeastern Indiana Rural Electric Membership Corporation, approved February 7, 1958; and Cause No. 27441 In The Matter of The Joint Petition of Public Service Company of Indiana, Inc., and Clark County Rural Electric Membership Corporation, approved February 14, 1958, two of which orders contained statements that the REMC involved should first obtain permission from this Commission before drawing down from the REA the additional sums of money on the loans theretofore authorized by REA, but not fully advanced, and that a failure to obtain such permission from this Commission would be considered by this Commission as a violation of the law by the REMC. In view of the rulings contained in this Ex Parte Order, the statements in the three aforementioned orders are superseded and should be given no effect in the future insofar as they conflict with the rulings and declarations made herein, including, but without limiting the generality thereof, the provision that the drawing down of any additional sum of money on the loans heretofore authorized without first obtaining permission from this Commission will be considered a violation of the law; and to the extent of the conflict, if any, the conflicting provisions of the three aforementioned provisions are hereby rescinded.
"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that corporations, organized and/or operating, under the Indiana Rural Electric Membership Corporation Act of 1935, as amended, shall obtain approval and authority from this Commission before incurring any indebtedness, issuing evidence of indebtedness therefor, or encumbering its used or useful property, plant or business or any part thereof on the same basis upon which other public utilities are required to, and presently do, obtain permission from this Commission; and a failure to *182 do so in the future will be considered by this Commission as a violation of the law; provided, that no penalty shall be levied by reason of those loans from the United States Government through its Rural Electrification Administration which have been approved prior to February 20, 1958, and which are itemized and set forth hereinbefore in this order, including those sums which have been authorized, but have not been advanced prior to this time; provided further, that this order shall supersede the provisions of any other orders of this Commission which are in conflict with this order."
The record before us further reveals that on March 26, 1956, and within the time prescribed by the aforesaid Act, seven rural electric membership corporations requested a transcript in order to seek a review of said Ex Parte Order. The Commission refused to furnish the appellants herein with said transcript. Thereafter, this court granted the appellants an extension of time within which to file a transcript of record and also issued an alternate writ of mandate to the Public Service Commission of Indiana, hereinafter called Commission, to furnish the appellants, hereinafter called REMCs, with a transcript.
The record and assignment of error were properly filed with the Clerk of this court within the time this court had allowed.
The record also shows that after the REMCs filed their briefs, the Commission, by its duly-appointed members, filed a motion to dismiss said appeal and/or judicial review. This court overruled the motion to dismiss.
The assigned error is, "(1) The decision ruling and order are contrary to law."
The parties herein have raised three important issues, which are as follows: REMCs' contention:

*183 "1. Does the Public Service Commission of Indiana, under the Public Service Commission Act of Indiana, have jurisdiction or authority over the REMCs' rights and powers to create indebtedness, issue evidences thereof and secure the payment thereof by encumbering their property or do the REMCs, under the Indiana Rural Electric Membership Corporation Act have such rights and powers without the approval of the Public Service Commission?
"2. Was the Commission's Order `Approved March 7, 1958,' in its `Ex Parte Cause No. 27605' unlawfully approved, issued or made, without the Commission observing the conditions and provisions for making its orders set forth in The Public Service Commission Act, particularly Sections 5 and 8, ch. 101, Acts 1941; Burns' Secs. 54-112 and 115?"
The Commission's contention:
"It is the contention of The Public Service Commission that its jurisdiction and authority over the REMCs' rights and powers to create indebtedness could not be in issue herein, because it is not an adversary proceeding, and the order was a statement of policy for the guidance of the REMCs, rather than a final order within the provisions of said Chapter 189, Acts of 1957."
It is the Commission's contention that the foregoing order is a statement of policy for the guidance of the REMCs, rather than the final order within the provisions of Chapter 189 of the Acts of 1957, the same being § 54-443, Burns' Ind. Stat. Ann., 1957 Supplement, and further that the jurisdiction and authority of the Commission over the REMCs' rights and powers to create indebtedness could not be an issue herein because it is not an adversary proceeding. With this contention we cannot agree, and we will point out our reasons later herein.
*184 The Commission further maintains that the REMCs have failed to exhaust their administrative remedies in that they might file a complaint on a petition with the Commission under § 54-415, Burns' 1957 Supplement. This position is untenable as § 54-415, supra, relates solely to rates or services, and, of course, there is no question of rates or services involved in this matter before us. Furthermore, we interpret the Ex Parte Order of the Commission to be an initial integral step in a regulatory scheme; therefore, the REMC is not required to await a further regulatory order before contesting the Commission's jurisdiction. See Panhandle Pipe Line Co. v. Comm'n, 332 U.S. 507, 92 L.Ed. 128.
The Commission also maintains that "there is no final decision, ruling or order of the Public Service Commission of Indiana, that there is no jurisdiction in this court of the subject matter of the attempted or asserted cause of action."
We hold that the foregoing order of the Commission, in this case, constitutes an unequivocal assertion of power of its jurisdiction and authority over the REMCs' rights and powers to create indebtedness, issuing evidence of indebtedness therefor or encumbering their property to secure the same, and this being an initial and integral step on a regulatory scheme is sufficient to present to this court the question of the jurisdiction and the power of the Commission under § 54-443, Burns' Ind. Stat. Ann., 1957 Supplement, the same being ch. 189 of the Acts of 1957.
Section 1 of said Act reads as follows:
"SECTION 1. Any person, firm, association, corporation, city, town or public utility adversely affected by any final decision, ruling or order of The Public Service Commission of Indiana, may, *185 within thirty (30) days from the date of entry of such decision, ruling, or order, appeal to the Appellate Court of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions, except as otherwise herein provided, and with the right in the losing party or parties in the Appellate Court to apply to the Supreme Court for a petition to transfer the cause to said Supreme Court as in other cases. An assignment of errors that the decision, ruling or order of the Commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered."
The foregoing section of the statute is clear and most certainly the several appellants herein were adversely affected and from the verbiage of the entire order, we construe it, in this particular case, to be final declaration of the Commission asserting their power, authority and jurisdiction over the REMCs, at least as far as the REMCs' rights to create indebtedness without the approval of the Commission.
And, in addition to the aforesaid statute, our Supreme Court has held, "that the inherent right to a review of an order of an administrative board or commission is not statutory, but a right under the Indiana Constitution. Warren v. Indiana Telephone Co. (1940), 217 Ind. 93, 26 N.E.2d 399; Joseph E. Seagram & Sons v. Board of Com'rs, etc. (1943), 220 Ind. 604, 45 N.E.2d 491." Ballman v. Duffecy (1952), 230 Ind. 220, 229, 102 N.E.2d 646.
Thus, it appears the statute provides that any final decision, ruling or order of the Public Service Commission may be "appealed" to the Appellate Court for errors of law. Strictly speaking, it is not an "appeal," but it is a judicial review by the Appellate Court, which *186 is the court of exclusive original jurisdiction. (See, § 1, 54-443, Burns', supra.) "It is correct to say that the orders of an administrative body are subject to judicial review, and they must be so to meet the requirements of due process. Such review is necessary to the end that there may be an adjudication by a court of competent jurisdiction that the agency has acted within the scope of its powers, ... and that its determination comports with the law applicable to the facts found." Warren v. Indiana Telephone Co., supra, at p. 105. In other words, when the Commission has entered an order and this court has considered whether the order is contrary to law, every essential element of due process has been met and the complaining party has had his day in court. This, of course, is necessary under the provisions of our state constitution that "all courts shall be open, and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Article 1, § 12.
"What is the province of a court when the review of an administrative order is sought? `It must be conceded that it is the undoubted function of the court to determine the matter of jurisdiction, that is, the power of the administrative agency to decide the question which it has undertaken to decide. Jurisdiction is grounded on constitutional or statutory authority, the existence of which is always a judicial question.'" State ex rel. Standard Oil Co. v. Review Bd. (1951), 230 Ind. 1, 14, 101 N.E.2d 60; Warren v. Indiana Telephone Co., supra.
It is a fundamental principle of law that every administrative agency of the state of Indiana must find *187 the source of its authority in the statute conferring it, and it can only exercise the power conferred in conformity with the statute. See State Board Tax Comm. v. McDaniel (1928), 199 Ind. 708, 160 N.E. 347; State ex rel. v. Clamme (1922), (T.D. 1923), 80 Ind. App. 147, 134 N.E. 676.
Both the Supreme Court and our court have held that the Commission derives its authority from the statutes and possesses only such power as is conferred by statutes. See Chicago & E.I.R. Co. v. Public Service Comm. (1943), 221 Ind. 592, 49 N.E.2d 341; State ex rel. v. Vandalia R. Co. (1915), 183 Ind. 49, 108 N.E. 97; American Foundry Co. v. C.I. & L.R.R. Co. (1931), (T.D. 1934), 100 Ind. App. 111, 178 N.E. 295.
With the foregoing general principle of law in mind, it is necessary that we review both of the statutes pertaining to the REMC and the Public Service Commission to determine what powers, if any, the legislature conferred upon each.
Section 55-4410, Burns' Ind. Stat., 1951 Replacement, relating to the REMC Act, provides:
"Powers  Construction of act.  Each corporation formed under this act is hereby vested with all powers necessary or requisite for the accomplishment of its corporate purpose and capable of being delegated by the general assembly of the state of Indiana; and no enumeration of particular powers hereby granted shall be construed to impair any general grant of power herein contained, nor to limit any such grant to a power or powers of the same class or classes as those so enumerated. (Acts 1935, ch. 175, § 10, p. 838.)"
Section 55-4411, Burns' Ind. Stat., 1951 Replacement, provides in part:
"General and specific powers.  A corporation created under the provisions of this act shall have *188 power to do any and all acts or things necessary or convenient for carrying out the purpose for which it was formed, including, but not limited to:
"(a) To sue and be sued.
"(b) To have a seal and alter the same at pleasure.
"(c) To acquire, hold and dispose of property, real and personal, tangible and intangible, or interest therein and to pay therefor in cash or on credit, and to secure and procure payment of all or any part of the purchase-price thereof on such terms and conditions as the board shall determine.
"(d) To acquire, own, operate, maintain and improve a system or systems.
"(e) To pledge all or any part of its revenues or mortgage or otherwise encumber all or any part of its property for the purpose of securing the payment of the principal of and interest on any of its obligations.
....
"(h) To make any and all contracts necessary and/or convenient for the full exercise of the powers in this act granted, including, without limiting the generality of the foregoing, contracts with any person, federal agency, or municipality for the purchase of energy needed by the corporation to supply its members; for the management and conduct of the business of the corporation; for the fixing of the rates, fees, or charges for service rendered or to be rendered by the corporation subject, however, to the approval of the public service commission as to all such rates, fees, or charges for energy in the same manner and to the same extent as is provided by law for the regulation of such rates, fees or charges of public utilities.

"(i) To sell, lease, mortgage or otherwise encumber or dispose of all or any part of its property, as hereinafter provided.
"(j) To contract debts, borrow money and to issue or assume the payment of obligations.

*189 "(k) To levy and collect reasonable fees, rents, tolls and other charges for service rendered, subject to the approval of the public service commission as herein above provided." (Our emphasis.)
Section 55-4412 provides, as follows:
"Sale of assets  Authorization.  No corporation may sell, lease, exchange, mortgage, pledge or otherwise dispose of all, or substantially all, the property of the corporation unless the same shall be authorized by a resolution duly adopted at a meeting of its members duly called and held as provided in section eight (§ 55-4408) of this act, which resolution shall have received the affirmative vote of at least one-fifth (1/5) of all its members; Provided, however, That the board of directors of a corporation shall have full power and authority, without authorization by the members thereof, to authorize the execution and delivery of a mortgage, or mortgages, or a deed or deeds of trust of, or the pledging or encumbering of, any of or all the property, assets, rights, privileges, licenses, franchises and permits of the corporation, whether acquired or to be acquired and wherever situated, as well as the revenues therefrom, all upon such terms and conditions as the board of directors shall determine, to secure any indebtedness of the corporation to the United States of America or any agency or instrumentality thereof. (Acts 1935, ch. 175, § 12, p. 838; 1937, ch. 258, § 8, p. 1217; 1953, ch. 47, § 1, p. 152.)"
Section 55-4418 provides, in part:
"Supervision of public service commission.  (a) Any corporation organized or admitted to do business in this state under this act (55-4401  55-4426), shall be subject to the jurisdiction of the public service commission for the purpose of fixing rates to be charged to patrons of such corporation for energy, and for such purpose said public service commission is given jurisdiction to proceed in the same manner and with like power as is provided by the `Public Service Commission *190 Act' (§ 54-105 et seq.) in the case of public utilities."
It becomes apparent in reviewing the foregoing statutes that the REMC Act is not silent as to whom the legislature gave the power and authority to incur indebtedness, to issue evidence of indebtedness therefor, or to encumber its used or useful property, plant or business or any part thereof. It is clearly given to the membership and the Board of Directors of such corporation by § 55-4412, supra.
In reviewing the Public Service Commission Act, which we will not set out because we fail to find wherein that Act of the legislature gave the commission the power or authority to demand or order the REMCs to obtain approval and authority of said commission, before incurring any indebtedness, issuing evidence of indebtedness therefor or encumbering its used or useful property, plant or business or any part thereof. Of course, asserting such power and authority under such circumstances would be contrary to law.
Both parties interested herein concede that the Public Service Commission has the power and authority to determine what territory a REMC corporation may serve and what rates it may charge its patrons for its service.
In reviewing the Supreme Court decision in the case of Kosciusko County, etc. v. Public Service Comm. (1948), 225 Ind. 666, 77 N.E.2d 572, the Commission stated in their order, which they were partly relying on, we fail to find wherein the court held that the Public Service Commission had any power and authority or the jurisdiction over the REMCs' rights and powers, under the REMC Act to create indebtedness, issue evidence thereof or to encumber *191 its property. It affirmatively appears by a review of the REMC Act that the Commission's supervisory powers are limited to rates and territories. We, therefore, hold that the "Ex-Parte order No. 27605" of the Commission is contrary to law and of no force and effect.
NOTE.  Reported in 155 N.E.2d 149.