KANKAKEE VALLEY RURAL ELECTRIC MEMBERSHIP CORPORATION, Appellant–Respondent,

v.

UNITED TELEPHONE COMPANY OF INDIANA, INC., d/b/a Sprint, Appellee–Petitioner,

Indiana Bell Telephone Company, Inc., Appellee–Intervenor.

No. 93A02–0505–EX–463.

Court of Appeals of Indiana.

March 17, 2006.

Charles W. Ritz III, Carol Sparks Drake, Parr Richey Obremskey & Morton, Lebanon, for Appellant.

Charles R. Mercer, Jr., Indianapolis, for Appellee United Telephone Company of Indiana, d/b/a Sprint.

Brian D. Robinson, Indiana Bell Telephone, Inc., Peter J. Rusthoven, Teresa E. Morton, Barnes & Thornburg LLP, Indianapolis, for Appellee Indiana Bell Telephone Company, Inc.

Robert G. Mork, J. David Agnew, Indianapolis, for Appellee Indiana Office of Utility Consumer Counselor.

## OPINION

BAKER, Judge.

Appellant-respondent Kankakee Valley Rural Electric Membership Corporation (Kankakee), appeals from the Indiana Utility Regulatory Commission's (IURC) assertion of jurisdiction over a matter regarding certain utility pole attachments that were used by appellee-petitioner United Telephone Company of Indiana, Inc., d/b/a Sprint (Sprint), and appellee-interve-

nor Indiana Bell Telephone Company, Inc. (SBC). In essence, Kankakee argues that the IURC could not hear the dispute because Kankakee had opted out of the IURC's jurisdiction. Concluding that the IURC properly exercised jurisdiction over this matter, we affirm its order and remand this cause to the IURC with instructions that it proceed to address the merits of this action.

## FACTS

Kankakee is a rural electric membership corporation (REMC) that is organized in accordance with Indiana Code section 8–1–13–1 et seq.,[1] which provides electric services to its various members. Kankakee also owns conduits, poles and other equipment located on, over, or under different streets and highways in Indiana. At Kankakee's annual meeting that was held on June 29, 1998, its members voted to withdraw from the IURC's jurisdiction in · accordance with the procedure outlined in Indiana Code section 8–1–13–18.5 (the Opt–Out law).[2]

At some point, Kankakee and Sprint entered into a written agreement that permitted Sprint to attach its telecommunication facilities to Kankakee's utility poles. Thereafter, Kankakee claimed that the written agreement had expired, and while the parties engaged in some negotiation regarding new conditions and appropriate compensation that Kankakee should receive for permitting Sprint to attach its facilities to its utility poles, they were unable to agree on any new terms.

As a consequence, Kankakee initiated a trespass action against Sprint and SBC,

which also owned attachments on certain poles that were owned by Kankakee. Both Sprint and SBC argued that the IURC had jurisdiction over the matter because they were "public utilities subject to IURC jurisdiction." Appellee's Br. p. 2. The trial court agreed, observing that the dispute over the compensation that may be owed to Kankakee should be resolved by the IURC. However, the trial court retained jurisdiction to resolve any remaining issues after the IURC had resolved the compensation dispute.[3]

Thereafter, Sprint filed a complaint with the IURC on November 24, 2004, requesting the IURC to investigate the issue of compensation, to issue an order that would permit Sprint to use the utility poles, and to "prescribe reasonable conditions and compensation for such joint use." Appellant's App. p. 7.

On December 10, 2004, SBC petitioned to intervene in the action, claiming that Kankakee had also demanded that it enter into a new agreement with higher rates. Inasmuch as the parties could not negotiate the terms, SBC maintained that it had a substantial interest in the proceedings because "the findings, rulings and orders . . . could impact SBC Indiana's use of Kankakee's poles." Appellant's App. p. 10. The IURC ultimately allowed SBC to intervene.

Thereafter, Kankakee moved to dismiss Sprint's complaint, contending that the IURC was without jurisdiction over its pole usage because Kankakee had opted out of its jurisdiction. On March 29, 2005, an administrative law judge denied Kan-

---

1. Acts 1935, ch. 175, § 1, p. 383.

2. Indiana Code section 8–1–13–8.5(a) provides that "except as provided in subsection (i), a corporation organized under IC 23–17 whose membership includes one (1) or more corporations organized under this chapter

may withdraw from the jurisdiction of the commission." Additional text of this statute is more fully set forth below.

3. This court rejected Kankakee's attempted interlocutory appeal of this order on June 18, 2004.

kakee's motion to dismiss. Kankakee then appealed this decision to the IURC and requested a stay of the proceedings. The IURC denied the appeal, and Kankakee now appeals to this court.

### DISCUSSION AND DECISION

■ Before proceeding to the merits of this appeal, we initially observe that our General Assembly created the IURC primarily as a "fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature." *U.S. Gypsum v. Ind. Gas Co.*, 735 N.E.2d 790, 795 (Ind.2000). The IURC's purpose is to ensure that public utilities provide constant, reliable, and efficient service to the citizens of this State. *Ind. Bell Tel. Co., Inc. v. Ind. Util. Regulatory Comm'n*, 715 N.E.2d 351, 354 (Ind.1999). Moreover, the broad grant of regulatory authority given to the IURC by the legislature includes implicit powers necessary to effectuate the statutory regulatory scheme. *Office of Util. Consumer Counselor v. Pub. Serv. Co. of Ind., Inc.*, 608 N.E.2d 1362, 1363 (Ind.1993).

■ Appeals from the IURC are properly before this court for review. Ind. Code § 8–1–3–1; *see also City of Columbia City v. Indiana Util. Regulatory Comm'n*, 618 N.E.2d 21, 23 (Ind.Ct.App. 1993). Generally, our review of an administrative order is limited to whether the agency possessed jurisdiction under the applicable statutes, whether the agency's order was made in conformity with proper legal procedure, and whether the order violates any constitutional, statutory, or legal principle. *See Bolerjack v. Forsythe*, 461 N.E.2d 1126, 1130 (Ind.Ct.App.1984). Additionally, the entity challenging the IURC's decision has the burden of proving that the decision is contrary to law. *Wilfong v. Ind. Gas Co.*, 399 N.E.2d 788, 790 (Ind.Ct.App.1980). However, "any agency determination that is not in accordance

with the law may be set aside because a reviewing court owes no deference to an agency's conclusions of law." *PSI Energy, Inc. v. Office of Util. Consumer Counsel*, 764 N.E.2d 769, 774 (Ind.Ct.App.2002), *trans. denied.*

■ In addressing Kankakee's contention that the IURC lacked jurisdiction over this dispute, we initially observe that Indiana Code section 8–1–2–1(a) provides that:

(a) *"Public utility"*, as used in this chapter, means *every corporation*, company, partnership, limited liability company, individual, association of individuals, their lessees, trustees, or receivers appointed by a court, *that may own, operate, manage, or control any plant or equipment* within the state for the:

(1) conveyance of telegraph or telephone messages;

(2) *production, transmission, delivery, or furnishing of heat, light, water, or power;* or

(3) collection, treatment, purification, and disposal in a sanitary manner of liquid and solid waste, sewage, night soil, and industrial waste.

The term does not include a municipality that may acquire, own, or operate any of the foregoing facilities.

(Emphases added). At issue here is the Pole Attachment Statute, Indiana Code section 8–1–2–5, which provides that:

(a) *Every public utility, and every municipality, and every person, association, limited liability company, or corporation having tracks, conduits, subways, poles, or other equipment on, over, or under any street or highway shall for a reasonable compensation, permit the use of the same by any other public utility or by a municipality owning or operating a utility*, whenever public convenience and necessity re-

quire such use, and such use will not result in irreparable injury to the owner or other users of such equipment, nor in any substantial detriment to the service to be rendered by such owners or other users.

(b) In case of failure to agree upon such use or the conditions or compensations for such use ... any public utility or any person, association, limited liability company, or corporation interested may apply to the commission and if after investigation the commission shall ascertain that public convenience and necessity require such use or such physical connections, and that such use or such physical connection or connections would not result in irreparable injury to the owner or other users of such equipment or the facilities of such public utilities, nor in any substantial detriment to the service to be rendered by such owner or other public utilities or other users of such equipment or facilities, it shall by order direct that such use be permitted and prescribe reasonable conditions and compensations for such joint use.

(Emphasis added).

Notwithstanding the fact that Kankakee is a public utility and the Pole Attachment Statute requires a public utility to permit the use of its utility poles for reasonable compensation, Kankakee urges that the IURC was without jurisdiction because Kankakee had opted out of its jurisdiction pursuant to the Opt–Out law:

(a) Except as provided in subsection (i), a corporation organized under this chapter or a corporation organized under IC 23–17 whose membership includes one (1) or more corporations organized under this chapter may withdraw from the jurisdiction of the commission. A corporation organized under this chapter that withdraws from the jurisdiction of the commission must comply with all provisions of this chapter that do not directly

concern the commission and must continue to pay the public utility fee required under IC 8–1–6.

. . .

(i) If a corporation withdraws from the jurisdiction of the commission, the commission shall continue to exercise jurisdiction over the corporation only as to the following:

(1) Electric service area assignments under IC 8–1–2.3.

(2) Certificates of public convenience and necessity, certificates of territorial authority, and indeterminate permits under IC 8–1–2, IC 8–1–8.5, or IC 8–1–8.7.

(3) Water utility disputes under IC 8–1–2–86.5.

I.C. § 8–1–13–18.5.

When considering these statutes, Kankakee argues that the Pole Attachment statute and the Opt–Out law are in conflict. In essence, Kankakee avers that the Opt–Out law nullifies its obligations under the Pole Attachment statute because the Opt–Out law mentions the retention of IURC's jurisdiction in only the limited circumstances that are enumerated in that statute.

■ We first note that it is only when there appears to be an irreconcilable conflict between two statutes should this court interpret legislative intent to be that one statute gives way to another. *Ind. State Highway Comm'n v. Bates & Rogers Constr., Inc.,* 448 N.E.2d 321, 324 (Ind.Ct. App.1983). Moreover, as this court observed in *Ashlin Transp. Serv., Inc. v. Indiana Unemployment Ins. Bd.,* 637 N.E.2d 162 (Ind.Ct.App.1994):

[T]he court will look to each and every part of the statute; to the circumstances under which it was enacted; to the old law upon the subject, if any; to other statutes upon the same subjects, or rela-

tive subjects, whether in force or repealed, to contemporaneous legislative history, and to the evils and mischiefs to be remedied.

*Id.* at 167. In other words, this court's fundamental responsibility is to determine and effect the legislature's intent. *In re Contempt of Wabash Valley Hosp., Inc.,* 827 N.E.2d 50, 55 (Ind.Ct.App.2005).

When considering the relevant statutory provisions in relation to the standards set forth above, it is apparent that the Pole Attachment Statute gives utilities a conditional right of access to Kankakee's utility poles. To be sure, the statute provides that *"every person, association, limited liability company, or corporation"* that owns utility poles over Indiana streets or highways must permit a public utility to use those poles, for reasonable compensation, if public convenience and necessity so requires and if no irreparable injury will result. I.C. § 8–1–2–5(a) (emphasis added). Additionally, subsection (b) of the statute grants the IURC jurisdiction to resolve any dispute between the pole owner and the utility regarding the terms and conditions for use of the poles. The statute makes no distinction as to whether the owner of the poles is a regulated utility. The fact that Sprint is seeking to enforce its right to use the poles confers jurisdiction on the IURC over the dispute.

■ While Kankakee argues that the IURC may no longer regulate the use of its poles because it has withdrawn from the IURC's jurisdiction, there is no showing that the IURC was subjecting Kankakee to any type of utility regulation. Again, the IURC is enforcing Sprint's right to access the utility poles. Moreover, when examining the provisions of the Opt–Out law that explicitly reserve jurisdiction to the IURC, such as electric service area assignments, certificates of public convenience and water utility disputes, it is apparent that those matters are applicable to public utilities. To be sure, we can only surmise that one of the purposes of the Pole Attachment Statute is to further the public convenience and necessity by facilitating the efficient use of utility poles and other facilities that are located on public streets and highways. In our view, the Pole Attachment statute enhances the public welfare by requiring the sharing of poles and other facilities. Indeed, such sharing serves to reduce the costs associated with providing public utility service by avoiding the need to construct duplicate pole lines and other facilities. In essence, granting jurisdiction to the IURC in matters that involve utility pole disputes assures that decisions are made by the administrative agency that has the institutional expertise to do so.

■ In addition to the above, we note that the exceptions set forth in the Opt–Out law concern issues that are purely matters of public utility regulation. *See* I.C. § 8–1–13–18.5(i)(1–3). And the Pole Attachment statute applies to every other person and association that owns poles— not just public utilities. That said, we think that the purpose of permitting REMC's to avoid certain matters of utility regulation is not frustrated or prejudiced by applying the Pole Attachment statute's provisions to those REMC's that have otherwise opted out of the IURC's jurisdiction.

These points notwithstanding, Kankakee directs us to this court's opinion in *Boone County Rural Elec. Membership Corp. v. Pub. Serv. Comm'n of Ind.,* 129 Ind.App. 175, 155 N.E.2d 149 (1958), in support of its argument that the IURC should not have jurisdiction in this matter. We find *Boone County* inapposite here, because that case only decided whether the Public Service Commission of Indiana had jurisdiction or authority over the REMC's rights and powers to create indebtedness.

*Id.* at 153. In addressing this issue, we noted that .

> It becomes apparent in reviewing the foregoing statutes that the REMC Act is not silent as to whom the legislature gave the power and authority to incur indebtedness, to issue evidence of indebtedness therefore, or to encumber its used or useful property, plant or business or any part thereof. *It is clearly given to the membership and the Board of Directors of such corporation.*
>
> In reviewing the Public Service Commission Act, which we will not set out because *we fail to find wherein the Act of the legislature gave the Commission the power or authority to demand or order the REMCs to obtain approval and authority of said Commission, before incurring any indebtedness,* issuing evidence of indebtedness therefore or encumbering its used or useful property, plant or business or any part thereof. Of course, asserting such power and authority under such circumstances would be contrary to law.

*Id.* at 155–56 (Emphases added). No issue was raised—and there was no discussion in *Boone County*—as to whether an REMC had "opted-out" of a provision where the Commission may otherwise have had authority or jurisdiction over a particular matter.

Finally, we reject Kankakee's argument that the Opt–Out law should be construed to eliminate the IURC's jurisdiction in this instance because that statute is more specific and must prevail over the more general Pole Attachment Statute. In examining the statutes, it is apparent that the Pole Attachment Statute is the more specific. In particular, that statute addresses—in detail—the right of a public utility to attach to a pole in a public right-of-way owned by any entity, whether it is a public utility or not. In contrast, the more general Opt–Out law does not address the issue of pole attachments. Rather, that statute focuses on the ability of a public utility to avoid IURC jurisdiction over certain areas of its operation. Hence, Kankakee's argument fails on this basis.

In sum, we conclude that the Pole Attachment Statute does not require a pole owner to be an IURC-regulated entity for it to have jurisdiction over a dispute between the pole owner and a public utility. To be sure, because the scope of the Pole Attachment Statute encompasses every type of entity that owns poles along public streets and highways, regardless of whether the owner is a public utility, and regardless of whether the owner is otherwise subject to the IURC's jurisdiction, Kankakee's exercise of its rights under the Opt–Out law is irrelevant. In short, even though Kankakee's withdrawal from the IURC's jurisdiction removed Sprint from the area of utility regulation, that withdrawal had no effect on the IURC's jurisdiction to resolve utility pole disputes. As a result, we conclude that the IURC properly exercised jurisdiction over this matter.

The order of the IURC is affirmed, and this cause is remanded for further proceedings consistent with this opinion, with instructions that the IURC proceed to address the merits of this action.[4]

NAJAM, J., and BAILEY, J., concur.

---

4. In light of our discussion above, we decline to address SBC's contention raised in its appellee's brief that we should reject Kankakee's claims on the basis of res judicata and/or collateral estoppel because Kankakee had already purportedly litigated this matter before the Porter Superior Court.