**INDIANA CIVIL RIGHTS COMMISSION and Lonnie Knowles, Appellants– Respondents,**

**v.**

**MARION COUNTY SHERIFF'S DEPARTMENT, Appellee– Petitioner.**

No. 55A01–9406–CV–189.

Court of Appeals of Indiana, First District.

Dec. 28, 1994.

Transfer Denied May 11, 1995.

Jacquelyn Thompson, Indianapolis, for appellants.

Donald L. Centers, Harrison & Moberly, Indianapolis, for appellee.

## OPINION

BAKER, Judge.

In this appeal, we examine the means by which an employee must prove his claim that he received disparate disciplinary treatment from his employer on account of his race.

Appellant-respondent Lonnie Knowles[1] alleges that the trial court erred in reversing the determination of the Indiana Civil Rights Commission (ICRC) that the Marion County Sheriff's Department's (MCSD) decision to terminate Knowles' employment constituted racial discrimination.

### FACTS

Knowles worked as a Corrections Officer for the MCSD. On January 10, 1989, Knowles and Jill Gorton, an Indianapolis Police Department employee, were alone on an elevator when Knowles requested a kiss, pressed his chest against Gorton's, and rubbed her thighs. Gorton filed a complaint with the MCSD alleging that Knowles had sexually harassed her. On March 7, 1989, the State charged and arrested Knowles for the battery of Gorton. On that same day, MCSD terminated Knowles' employment citing his violation of four departmental rules.

On March 15, 1989, Knowles filed a complaint before the ICRC alleging that his termination was motivated by racial animus in that he was a black male accused of sexually harassing a white female. He alleged that white MCSD employees who had engaged in similar misconduct had not been terminated. To support his allegation, Knowles presented evidence that Deputy Sheriff Steven Eltzroth and Corrections Officer John Redmond, both accused of sexual harassment, were disciplined less harshly than he. In response, MCSD offered evidence of the termination of Corrections Officer Robert Riggs who had been charged with battery and the violation of five MCSD rules.

After a hearing, the ICRC hearing officer entered proposed findings of fact and conclusions of law determining that Knowles had established a prima facie case of racial discrimination. The hearing officer found that when compared to the discipline accorded white male MCSD employees found guilty of sexual harassment, Knowles' termination for the same conduct constituted disparate treatment. MCSD objected to the hearing officer's decision. The ICRC overruled the ob-

---

1. Although the ICRC is named in the caption, it is not a party in this appeal.

jections and adopted the hearing officer's findings and conclusions.

Thereafter, MCSD sought judicial review of the ICRC's decision. On March 10, 1994, the trial court reversed the ICRC's decision as unsupported by substantial evidence, arbitrary, capricious, and an abuse of discretion. The court determined that the only MCSD employee with whose discipline the discipline imposed upon Knowles could be compared was Riggs, and he was treated no differently than Knowles. Knowles appeals the trial court's reversal of the ICRC's decision.

### DISCUSSION AND DECISION [2]

Knowles claims one issue for our review which we restate as whether the court's reversal of the ICRC's finding of racial discrimination was erroneous in that the court improperly determined which MCSD employees could be compared to Knowles in order to assess whether MCSD engaged in racially disparate disciplinary treatment.

■ Judicial review of an administrative decision is limited to whether the agency's decision was based upon substantial evidence, was arbitrary or capricious, and was in violation of any constitutional, statutory or legal principle. *County Dep't of Pub. Welfare of Vanderburgh County v. Deaconess Hosp.* (1992), Ind.App., 588 N.E.2d 1322, 1327, *trans. denied.* In reviewing agency decisions, a court may not conduct a trial de novo. *Id.* Thus, courts defer to an agency's factfinding, provided the findings are supported by substantial evidence. *Id.* In determining the substantiality of the evidence to support an administrative determination, the reviewing court must consider the evidence in opposition to the challenged findings of fact as well as the evidence which tends to support the finding. *City of Evansville v. Southern Indiana Gas & Elec. Co.* (1975), 167 Ind.App. 472, 486, 339 N.E.2d 562, 573.

A discriminatory practice is defined in IND.CODE § 22–9–1–3($l$) as "the exclusion of a person from equal opportunities because of race, religion, color, sex, disability, national origin, or ancestry." This definition is quite similar to the corresponding provision of the federal Civil Rights Act of 1964, Title VII, § 703(a), 42 U.S.C.A. § 2000e–2(a), and has been construed consistently with that statute. *Indiana Civil Rights Com'n v. City of Muncie* (1984), Ind.App., 459 N.E.2d 411, 418. Although not binding upon this court, federal decisions are helpful in construing the Indiana Civil Rights Act and have been cited in past Indiana case law.

■ We observe that no Indiana court has clearly set forth the requirements that a plaintiff claiming racially disparate disciplinary treatment by an employer must prove in order to succeed. Thus, we borrow from our federal cousins once again, and announce that the prima facie case requirement applicable in Title VII actions, as set forth in *Moore v. City of Charlotte* [3] (4th Cir.1985), 754 F.2d 1100, 1105–06, *cert. denied* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623, should apply to cases under the Indiana Civil Rights Law. Specifically, an employee claiming racially disparate treatment by an employer must establish a prima facie case by showing 1) that the employee engaged in prohibited conduct similar to that of a co-employee of another race, and 2) that disciplinary measures enforced against the employee were more severe than those enforced against the co-employee. *Id.* After the employee establishes his prima facie case, the employer may advance a rationale for treating the com-

---

**2.** We direct Knowles' counsel to Ind. Appellate Rule 7.2(A)(3), which requires notations be made on the margin of each page of the transcript of the evidence indicating, among other things, the name of each witness. It would have been helpful in our review had counsel followed this rule and named the testifying witness in the margin throughout the record.

**3.** The *Moore* model for establishing a prima facie case is based upon the model set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, for plaintiffs who claim that their employment applications were rejected for discriminatory reasons. In *Moore,* the court noted that the *McDonnell* case differs because it dealt with a discriminatory hiring decision rather than a discriminatory disciplinary decision. Nevertheless, the *Moore* court found that the purpose behind the *McDonnell* model, namely the elimination of the most common nondiscriminatory reasons for the contested decision, remains valid and thus the model is appropriate for disciplinary cases. We agree and adopt the *Moore* model.

pared employees differently. *Id.* at 1106. Here, the employer may set forth evidence that may only be available to him, such as insight into the discretionary factors underlying the decision to discipline two employees differently. *Id.* If the employer fulfills this obligation, the employee must rebut the proffered explanation and meet the ultimate burden of proving intentional discrimination. *Id.*

Thus, in order for Knowles to prove that his termination was motivated by racial discrimination, he must prove that other white MCSD employees who engaged in similar misconduct were disciplined less severely than he. Hence, the pivotal issue in this case is which MCSD employees engaged in similar misconduct such that their discipline can be compared to the discipline Knowles received. Knowles argues that the court erred in not comparing the disciplinary action taken against Eltzroth and Redmond because they engaged in similar misconduct yet they were disciplined less severely.

Before we begin our analysis of which MCSD employees engaged in similar misconduct to that of Knowles, we note that the parties dispute whether Knowles was discharged because he engaged in sexual harassment or because he had been arrested for battery. The record shows that MCSD terminated Knowles because he had been accused of battery. The termination notice that Knowles received from MCSD notified him that he was being arrested for battery and was being terminated that same day for violating MCSD rules: 365—General Policies, 402—General Behavior, 416—Acts Omissions Contrary to Good Order, and 401—Violation of Law. Because Knowles was discharged the same day that he was arrested for battery and because the termination notice referred to his arrest, this could support only an inference that he was fired for engaging in battery which resulted in a violation of several departmental rules. Furthermore, Captain Karen Hamilton, the commander of the personnel section for MCSD, testified that Knowles was fired as a result of the battery charge against him which was criminal in nature. R. at 551.

■ Having determined that Knowles was discharged for engaging in battery, we now examine whether Eltzroth, Redmond, and Riggs were disciplined for engaging in similar misconduct. Eltzroth was a white deputy sheriff who was accused of sexual harassment. MCSD disciplined him by suspending him without pay for ten days. Knowles contends that because Eltzroth was merely suspended, rather than terminated, this evidences disparate treatment based on race. We disagree.

Eltzroth's suspension cannot be compared to Knowles' discharge because the two individuals did not engage in similar misconduct. Sexual harassment is a civil matter while committing battery is a criminal offense. The ICRC, in concluding otherwise, must have reasoned that Eltzroth's sexual harassment incident was similar misconduct to Knowles' battery merely because Knowles' battery charge arose out of a sexual harassment incident. This conclusion was erroneous. The misconduct Knowles and Eltzroth engaged in was not similar and, thus, the resulting disciplinary action taken against each cannot be compared for purposes of discerning whether disparity in discipline occurred.

In regard to Corrections Officer Redmond, he was a white MCSD employee who was suspended for five days for violating departmental rules which specifically prohibited sexual harassment. As stated above, engaging in sexual harassment is not misconduct similar to battery. Thus, the discipline received by Redmond cannot be compared to that received by Knowles.

Finally, Knowles asserts that the court erroneously concluded that Corrections Officer Riggs was the only MCSD employee presented to the court whose discipline could be compared to Knowles'. We cannot agree. Riggs, a white corrections officer, was arrested for battery as well as other criminal offenses. He allegedly shoved and grabbed a female in an incident that arose out of a hit and run accident. MCSD, in terminating Riggs, cited his violation of five departmental rules including three that Knowles had violated, namely the rules regarding violation of law, general behavior, and general policies.

Ultimately, Riggs, like Knowles, was convicted for battery. Thus, because Riggs engaged in battery and violated three of the same departmental rules, his misconduct was similar to Knowles' such that the disciplinary action taken against him can be compared to that which Knowles received. *McDonald v. Santa Fe Trail Transp. Co.* (1976), 427 U.S. 273, 283, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (precise equivalence in culpability between employees is not required).

Knowles claims, and the ICRC found, that in order to compare Riggs' discipline to Knowles', MCSD had to show that Riggs was terminated on the day that criminal charges were filed against him, as was Knowles. Otherwise, the reasoning continues, MCSD could not show they were worthy of comparison. This assertion is incorrect. The disciplinary treatment of two employees may be compared if it is shown that they engaged in similar misconduct. If similar misconduct is demonstrated, the employee must then prove that the employer disciplined one employee more favorably than the other. At this point, the employer does not have the burden of proving that it did not engage in disparate disciplinary treatment. Knowles and the ICRC have confused which party bore the initial burden of proof.

In the present case, as we stated previously, Knowles had the burden to establish a prima facie case of racial discrimination. It is only after Knowles accomplishes this that MCSD need defend itself by articulating a nondiscriminatory reason for any disparity in discipline. Here, Knowles did not establish a prima facie case of disparate treatment because he failed to present evidence that he engaged in misconduct similar to another MCSD employee, but was disciplined differently. Knowles' evidence compared the misconduct of Eltzroth and Redmond. However, they did not engage in similar misconduct and thus the disciplinary action taken against them could not be compared to Knowles' termination. Knowles failed to establish a prima facie case. Accordingly, MCSD did not have to advance any rebuttal evidence. Nonetheless, MCSD showed that Riggs did engage in similar misconduct and did not receive disparate disciplinary treatment. Hence, the trial court was correct in overruling the ICRC's decision.

■ Moreover, even if we had found that MCSD terminated Knowles for sexual harassment rather than battery, thus enabling Knowles to establish a prima facie case of discrimination in regard to Eltzroth and Redmond, MCSD advanced a nondiscriminatory reason for disciplining them less severely. Eltzroth and Redmond were subject to different departmental rules than Knowles.

Eltzroth, being a deputy sheriff, was a merit employee. Knowles, on the other hand, was a corrections officer and a non-merit employee. The legislature has provided that merit employees are entitled to substantially different employment rights than non-merit employees. Specific administrative procedures are established for employment related matters concerning merit officers. *See* IND.CODE § 36–8–10–11. Indiana statutory law requires hearings for disciplinary actions for merit employees of the MCSD. I.C. § 36–8–10–11(a). Further, the statute places restrictions on what disciplinary actions may be taken against such employees by the Sheriff. I.C. § 36–8–10–11. For example, merit employees may only be suspended for fifteen days without a hearing. I.C. § 36–8–10–11(b). In contrast, non-merit employees such as Knowles, may be terminated by the Sheriff at any time without notice or cause. I.C. § 36–8–10–10.6(a). Thus, because Eltzroth was a merit employee subject to different employment rights and disciplinary measures than Knowles who was an employee at will, the MCSD had a nondiscriminatory reason for disciplining Knowles differently from Eltzroth. Knowles failed to rebut this rationale and, as a result, has not satisfied his ultimate burden of proving racial discrimination.

In regard to Redmond, Knowles points out that Redmond was a non-merit corrections officer like Knowles, yet he was merely suspended for five days for engaging in sexual harassment. Knowles fails to recognize that he and Redmond were not subject to the same non-merit departmental rules because Redmond engaged in misconduct and was disciplined after the MCSD had established new rules for non-merit employees. R. at 541. Redmond was disciplined for violating the new rule prohibiting sexual harassment. The old rules, under which Knowles was

terminated, did not contain such a provision. Thus, because the disciplinary action taken against Redmond was pursuant to these new rules, MCSD has shown a nondiscriminatory reason for disciplining Redmond more favorably. Again, Knowles failed to rebut the MCSD's explanation. While the record contains a provision under the new rules allowing for employee suspension or termination as penalties for acts of misconduct, the record does not reveal any corresponding disciplinary provisions under the old rules. R. at 106. Knowles seems to have included in the record only the provisions that he was charged with violating and omitted any disciplinary provision that may have existed under the old rules. As a result, Knowles failed to introduce any evidence showing that appropriate disciplinary action under the new and old rules remained the same such that he and Redmond should have received the same discipline. Knowles failed to rebut the MCSD's rationale and did not meet his ultimate burden in proving racial discrimination.

In conclusion, we hold that the court was required to reverse the ICRC's determination as unsupported by the evidence and thus an abuse of discretion.

Judgment affirmed.

NAJAM and RILEY, JJ., concur.