**PSI ENERGY, INC., Appellant,**

v.

**INDIANA OFFICE OF THE UTILITY CONSUMER COUNSEL and PSI Industrial Group, Appellees.**

**No. 93A02–0103–EX–182.**

Court of Appeals of Indiana.

March 13, 2002.

---

⚉485

Kay E. Pashos, James R. Pope, Kelley A. Karn, PSI Energy, Inc., Plainfield, IN, Fred E. Schlegel, James H. Ham, III, Clayton C. Miller, Baker & Daniels, Indianapolis, IN, Attorneys for Appellant.

Anne E. Becker, Randall C. Helmen, Office of Utility Consumer Counselor, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

PSI Energy, Inc. ("PSI") appeals from part of the Indiana Utility Regulatory Commission's ("the IURC") interim order, in which the IURC denied PSI recovery of demand costs attributable to purchased power contracts entered into by PSI in April, May, and August of 1999. PSI's issue on appeal, restated, is whether the IURC's denial of PSI's request to recover demand costs incurred to purchase power to meet peak demands during the summer months of 1999 was contrary to law, arbitrary and capricious.

We affirm.

### Facts and Procedural History

The facts most favorable to the IURC's decision reveal that in December of 1998, PSI's Operating Committee ("the Committee") met to review their expected operating conditions for the upcoming winter of 1998/1999 and summer of 1999. Among other things, the Committee determined that PSI would need additional resources to meet the forecasted summer load for 1999. The Committee approved purchases needed to assure that PSI would be able to maintain the forecasted twelve percent operating reserve margin needed during the peak summer period of 1999. Appellant's App. p. 21. The majority of the power purchases for the 1999 peak period were completed by March, May and August of 1999. *Id.* at 84.

On May 28, 1999, PSI filed a Petition with the IURC requesting approval of a purchased power tracking mechanism that would allow PSI to recover, from customers, demand costs attributable to purchased power contracts. PSI also specifically requested that it be allowed to recover the demand costs attributable to the purchased power contracts it entered for the peak periods of 1999, 2000, and 2001. Additionally, PSI proposed to file on a periodic basis, for review by the IURC, its actual purchase arrangements for future peak periods.

The IURC held a hearing on this cause on December 9, 1999, and issued an interim order on May 31, 2000. Although the IURC approved PSI's proposed tracking mechanism on an interim basis to be applied to purchased power contracts entered into for peak periods of 2000, the IURC denied PSI's request for recovery of previously incurred demand costs attribut-

able to purchased power contracts for the 1999 peak period. The IURC found that even though there were legitimate reasons why PSI's proceeding took a long time to process (about one year from petition filing to Commission interim order), with regard to recovery of the 1999 demand costs, "PSI should have filed its case in a more timely manner with an appropriate review period for this Commission to be able to make a determination of reasonableness." *Id.* at 21.

Nevertheless, the IURC found "that PSI's proposed tracker is reasonable, just and proper, and should be approved for the summer of 2000, provided that PSI includes a mitigation credit in its tracker." *Id.* at 24. Importantly, the mitigation credit referred to in the finding was not offered by PSI, but rather, was proposed by the Office of the Utility Consumer Counselor ("the OUCC") during the pendency of PSI's petition.[1] The IURC found "[t]hat the mitigation credit should be calculated on an after-the-fact basis and should reflect profits from off-system sales made from PSI generation which has been 'freed up' as a result of tracked power purchases." *Id.* The IURC further found that PSI's request for recovery of demand costs attributable to purchased power contracts entered for the peak summer period of 2000 was appropriately sought prior to the period for which the proposed purchases were to be used. *Id.* at 21.

Next, the IURC held that in conformance with PSI's proposal, it should file a subdocket in order to periodically file its actual purchase arrangements for the upcoming peak months for IURC review. *Id.* at 24. The IURC found that thereafter, it would hold a hearing to scrutinize the reasonableness of and need for the contracts, including the reasonableness of the prices. Then, after issuing an order on reasonableness, the IURC would hold another "hearing for purposes of an after the fact review of the summer, 2000 purchases with any offsetting mitigation credit." *Id.* The IURC found that after its review of summer 2000 purchases, it would determine whether PSI would be allowed to continue the tracker mechanism. *Id.*

On June 20, 2000, PSI filed a Petition for Rehearing and/or Reconsideration and the OUCC filed a Petition for Reconsideration. PSI argued that the IURC erred when it denied recovery of PSI's 1999 demand costs attributable to the purchased power contracts. PSI specifically argued that it was not feasible or practical for it to have filed its original petition any earlier than May of 1999 because it had not completed the actual power purchases required to meet the operating reserve margin of twelve percent until March, April and August 1999. Therefore, PSI requested that the IURC reconsider its finding that PSI failed to timely file its request for recovery of its 1999 costs attributable to purchased power contracts for the peak periods of 1999. PSI also argued that the IURC's after-the-fact reasonableness determination regarding its 1999 costs was inappropriate, and therefore, requested that the IURC reconsider its finding that there was insufficient evidence upon which the IURC could base its decision.

In its Petition for Reconsideration, the OUCC argued that the IURC should not adopt PSI's proposed purchased power tracker mechanism because the tracker would require "customers to pay for large amounts of purchase power irrespective of

---

**1.** The OUCC is the state agency charged with the statutory duty to represent utility ratepay-ers. *See* Ind.Code § 8–1–1.1–4.1 (1998).

whether that power is used to satisfy retail Indiana demand for electricity." *Id.* at 27. The OUCC also argued that it never had an opportunity to respond to PSI's testimony regarding the mitigation credit or to present any alternative mitigation credits. *Id.* at 28.

On February 21, 2001, the IURC issued its Order on Petitions for Reconsideration. The IURC denied PSI's request for Rehearing and/or Reconsideration, finding that PSI was merely reiterating arguments it had made throughout the proceeding. The IURC also found that it was not necessary to rule on the OUCC's petition because the OUCC would have ample opportunity to present evidence regarding the mitigation credit in a subdocket, which had already been scheduled for hearing on March 15, 2001.

PSI filed this appeal on March 23, 2001. PSI now argues that the IURC's denial of its recovery of 1999 purchased power demand costs was contrary to law, arbitrary and capricious. PSI also argues that the IURC's summary denial of PSI's Petition for Rehearing and/or Reconsideration was arbitrary and capricious. Additional facts will be provided as necessary.

### Standard of Review

Our review of an administrative decision is limited to whether the agency based its decision on substantial evidence, whether the agency's decision was arbitrary and capricious, and whether it was contrary to any constitutional, statutory, or legal principle. *Ind. Civil Rights Comm'n v. Marion County Sheriff's Dep't,* 644 N.E.2d 913, 915 (Ind.Ct.App.1994), *trans. denied* (citation omitted). We are not allowed to conduct a trial de novo, but

rather, we defer to an agency's fact-finding, so long as its findings are supported by substantial evidence. *Id.* (citation omitted). Indiana Code section 8–1–3–1 prescribes a two-stage review process. *City of Evansville v. S. Ind. Gas & Elec. Co.,* 167 Ind.App. 472, 482, 339 N.E.2d 562, 571 (1975) (citing Ind.Code § 8–1–3–1 (1998)).[2]

The first stage of our review examines whether the agency's "decision contain[s] specific findings on all of the factual determinations material to its ultimate conclusions," which is especially important when the agency's decision is a rate order. *Id.* at 483, 339 N.E.2d at 571 (citations omitted). Basic findings of fact are important because they enlighten the reviewing court as to the agency's "reasoning process and subtle policy judgments" and allow for "a rational and informed basis for review," which lessens the likelihood that a reviewing court would substitute its "judgment on complex evidentiary issues and policy determinations" better decided by an agency with technical expertise. *Id.* (citations omitted). Requiring an agency to set forth basic findings also assists the agency "in avoiding arbitrary or ill-considered action." *Id.* (citations omitted).

The second stage of the review process under Indiana Code section 8–1–3–1 examines whether there is substantial evidence in the record to support the agency's basic findings of fact. *Id.* at 484, 339 N.E.2d at 571. To determine whether there was substantial evidence sufficient to support the agency's determination, we must consider all evidence, including evidence that supports the determination as

---

**2.** In pertinent part, Indiana Code section 8–1–3–1 states:

An assignment of errors that the decision, ruling, or order of the commission is contrary to law shall be sufficient to present

both the sufficiency of the facts found to sustain the decision, ruling, or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered.

well as evidence in opposition to the determination. *Ind. Civil Rights Comm'n,* 644 N.E.2d at 915 (citation omitted). A reviewing court may set aside agency findings of fact only when the court determines, after a review of the entire record, that the agency's decision clearly "lacks a reasonably sound basis of evidentiary support." *City of Evansville,* 167 Ind.App. at 485, 339 N.E.2d at 572.

■ Additionally, however, "[i]t is well established that the substantial evidence test cannot be utilized to assay the 'reasonableness' of the conclusions of ultimate fact inferred by an agency from its findings of basic fact." *Id.* at 485–86, 339 N.E.2d at 572 (citations omitted). Therefore, even though an agency's findings of fact may represent inferences drawn by the agency and thus not be susceptible to scrutiny for evidentiary support, the reasonableness of the agency's inferences is an appropriate judicial determination. *Id.* at 486, 339 N.E.2d at 573. Moreover, any agency determination that is not in accordance with the law may be set aside because a reviewing court owes no deference to an agency's conclusions of law. *Ind. Office of Envtl. Adjudication v. Kunz,* 714 N.E.2d 1190, 1193 (Ind.Ct.App.1999) (citation omitted).

## Discussion and Decision

PSI argues that the IURC's denial of PSI's request to recover demand costs attributable to purchase power contracts entered to meet demands during the peak summer period of 1999 was contrary to law, arbitrary and capricious. PSI specifically argues that the IURC's basis for denying PSI recovery of its 1999 demand costs (that the timing of PSI's filing did not present an appropriate review period for the IURC to be able to make a reasonableness determination) was contrary to law because the authorizing statute does not require a utility to obtain IURC pre-approval before incurring such costs.

In the proceeding below, the IURC approved PSI's use of a purchased power tracker, on an interim basis, to recover demand costs attributable to purchased power contracts entered for the peak summer months of 2000, but denied PSI's request for use of the same tracker to recover its demand costs attributable to similar contracts entered for the 1999 peak period.[3] In the initial paragraph of the Discussion and Determination section of the

---

3. In the proceeding below, the OUCC argued that the IURC did not have the proper authority to approve a purchased power tracker for the recovery of demand components of the purchased power contracts (as opposed to the fuel components), under Indiana Code section 8–1–2–42(a), which in pertinent part states:
  A public … utility may not file a request for a general increase in its basic rates and charges within fifteen (15) months after the filing date of its most recent request for a general increase in its basic rates and charges…. The phrase "general increase in basic rates and charges" does not include changes in rates related solely to the cost of fuel or to the cost of purchased electricity or adjustments in accordance with tracking provisions approved by the commission.

Because the OUCC failed to file a cross-appeal raising this issue, it waived the issue for our review. Nevertheless, in its May 16, 2001 Order in *In re PSI Energy, Inc.,* Cause No. 41448–S1, the IURC held that "[u]nder Indiana law it is clear that this Commission has legal authority to approve tracking mechanisms for fluctuating costs, such as purchased power and fuel costs." *See also L.S. Ayres & Co. v. Indianapolis Power & Light Co.,* 169 Ind.App. 652, 690–91, 351 N.E.2d 814, 838–39 (Ind.Ct.App.1976); *City of Evansville,* 167 Ind.App. at 523, 339 N.E.2d at 593; *In re Investigation Into Wholesale Power Cost Tracking,* Cause No. 34614 (Ind. PSC Dec. 17, 1976) ("Tracking Order").

IURC's Order below, the IURC explained, in general terms, the statutory rights of utilities, the effect of a competitive market on cost recovery, and the need to balance the interests of shareholders with those of consumers, and risks with rewards. The IURC stressed that although the statutory law permits utilities to recover costs through fuel adjustment clauses or trackers, there has never been a guaranteed recovery. In fact, the IURC found, "survivability of the firm is not even assured." Appellant's App. p. 18.

With specific regard to PSI's request for recovery of demand costs associated with its 1999 purchased power contracts, the IURC concluded "that PSI should have filed its case in a more timely manner with an appropriate review period for this Commission to be able to make a determination of reasonableness," and that an estimated ratepayer savings due to the purchased power contracts was insufficient evidence upon which to base a reasonableness finding. *Id.* at 21. In support of its conclusion, the IURC relied on several facts from the record. It first found that PSI's Operating Committee met in December of 1998 to assess operating conditions for the upcoming winter and summer of 1999, and simultaneously approved the power purchases for the 1999 peak period, even though it did not file a petition proposing a tracker mechanism with which it could recover the demand costs attributable to such purchases or a request for recovery of the demand costs until May 28, 1999.

The IURC also found that in PSI's May 28, 1999 petition, it requested approval to defer its costs of the 1999 purchases pending an order from the IURC, it requested that the IURC find the purchases reasonable, and it requested that the purchases be flowed through the tracker being proposed simultaneously. PSI also proposed that recovery of the costs begin approxi-

mately thirty days from the date of the IURC's Order, and continue through the last billing cycle in May 2000. Nevertheless, as the IURC pointed out, the hearing in the proceeding did not occur until December 9, 1999, and PSI's reply brief was not filed until March 30, 2000. Although the IURC admitted that there were legitimate reasons for the case to take longer than expected, the IURC found that there was insufficient evidence and time to make a reasonableness determination with regard to the 1999 purchased power contracts. *Id.*

PSI argues that the IURC routinely reviews and approves recovery of costs after such costs have been incurred, "had an open-ended 'review period,'" was not constrained by any strict deadlines, and that the subdocket in which the IURC approved recovery of demand costs for purchased power contracts made for the peak period of summer 2000 followed the exact same timetable as this cause, albeit one year later. Br. of Appellant at 17–19. We agree with PSI that it was not required to obtain IURC approval prior to incurring costs. Moreover, we do not read the IURC's Order to require preapproval before entering purchased power contracts. Although the IURC found that PSI afforded the IURC no opportunity for preapproval or scrutiny of the purchases, it also found that PSI should have filed its petition earlier to afford the IURC ample time to determine the reasonableness of the purchases. These two statements read together are indicative of the IURC's awareness of its responsibility to adequately scrutinize rate changes and provide ratepayers with some amount of warning prior to increases in rates.

Another obvious concern of the IURC was allowing PSI recovery of the 1999 demand costs and approving the tracker mechanism simultaneously on the evidence

before it. The IURC wrote, with regard to PSI's request for recovery of 2000 and 2001 demand costs as compared to its request for recovery of its 1999 demand costs: "We hope, however, that a more explicit sharing of the risks and rewards between ratepayers and shareholders would be included in a future proposal." Appellant's App. p. 21.

Finally, the IURC expressed its concern with regard to approving the tracker and the fact that PSI did not originally propose a mitigating factor to off-set profits made by reselling power when it said:

> The Commission, in approving this purchased power cost tracker for a limited duration, is relying on the representations made by [PSI] that [PSI] will *not* be selling power and re-purchasing power in a manner that will cause native load customers to incur additional costs. Because of our concerns, [PSI] should show, to the satisfaction of the Commission, that this situation has not occurred. [PSI] will be required to produce any and all records deemed necessary by the Commission staff, to allay the Commission's concerns in this regard. Any evidence that this situation has occurred will result in the revocation of the authority to recover purchased power costs through this mechanism.

*Id.* at 24 (emphasis in original).

We conclude that the Commission provided adequate findings of fact on this issue, and that there is substantial evidence in the record to support the IURC's denial of PSI's request for recovery of demand costs attributable to purchased power contracts entered for the 1999 peak summer period. Additionally, insofar as the IURC bases its decision on inferences that are susceptible to judicial review, we find that the IURC's inferences are reasonable.

**Conclusion**

We conclude that the IURC provided adequate findings of facts in its Order, that it had substantial evidence to support its findings, and that all inferences made by the IURC from its findings were reasonable. Therefore, we affirm that part of the IURC's Order that denied PSI's request for recovery of demand costs attributable to purchased power contracts entered into for the peak summer period of 1999.

Affirmed.

BROOK, C.J., and RILEY, J., concur.