**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Mar 15 2013, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**BETTY J. DODD**
**STEVEN W. GRIESEMER**
**JOSEPH P. ROMPALA**
Lewis & Kappes, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

Attorneys for Indiana Office of Utility
Consumer Counselor
**RANDALL C. HELMEN**
**LORRAINE HITZ-BRADLEY**
Office of Utility Consumer Counselor
Indianapolis, Indiana

Attorneys for NIPSCO
**NICHOLAS K. KILE**
**MARK J. CRANDLEY**
Barnes & Thornburg
Indianapolis, Indiana

**CLAUDIA J. EARLS**
**ERIN CASPER BORISSOV**
NISOURCE, INC.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NIPSCO INDUSTRIAL GROUP, | ) | |
| | ) | |
| Appellant-Respondent/Intervenor, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1205-EX-436 |
| | ) | |
| NORTHERN INDIANA PUBLIC SERVICE COMPANY, | ) | |
| | ) | |
| Appellee-Petitioner, | ) | |
| | ) | |
| INDIANA OFFICE OF UTILITY CONSUMER COUNSELOR, | ) | |
| | ) | |
| Appellee-Statutory Representative. | ) | |

**March 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

NIPSCO (Industrial Group) appeals the Indiana Utility Regulatory Commission's (IURC) denial of Industrial Group's Petition for Reconsideration regarding IURC's final order in Cause Number 42150-ECR 19. That order set the allocation method for the Northern Indiana Public Service Company's (NIPSCO) Environmental Cost Recovery Mechanism (ECRM) and Environmental Expense Recovery Mechanism (EERM) factors for a Qualified Pollution Control Property (QPCP) under construction. Industrial Group presents three issues for our consideration, one of which we find dispositive: Whether the IURC was required to abide by 170 IAC 4-6-15 when determining the rate allocation for the ECRM and EERM factors for QPCPs under construction. We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 21, 2011, the IURC issued an order on Cause Number 43969 (2011 Rate Settlement) to settle challenges to NIPSCO's 2010 proposed rate increase. The Industrial Group intervened. The parties and intervenors agreed that the issue of the rate allocation for ECRM and EERM factors for QPCPs under construction would be determined at a later date. The IURC ordered NIPSCO to propose a methodology for the rate allocation, which the other parties and intervenors were free to contest. *In re NIPSCO*, Cause No.

43969 (IURC Dec. 21, 2011).

On February 7, 2012, NIPSCO filed its Verified Petition (ECR Petition) requesting the approval of its proposed rate allocations for the ECRM and EERM factors. On February 23, the Industrial Group filed a petition to intervene, arguing an across-the-board methodology of rate allocation is required by 170 IAC 4-6-15, which states: "A utility's jurisdictional revenue requirement that results from the ratemaking treatment of qualified pollution control property under construction under this rule (170 IAC 4-6) shall be allocated among the utility's customer classes in accordance with the allocation parameters established by the commission in the utility's last general rate case."

On April 3, the Indiana Office of Utility Consumer Counselor (OUCC) filed testimony regarding the proposed rate allocation methodologies, one of which was a methodology called "12 CP," which allocates a customer's rate based upon the customer's average contribution to the average monthly peak of utility usage. (Br. of Appellee at 2.) The Industrial Group reasserted its position that the IURC was required to comply with 170 IAC 4-6-15 and the rate allocation should be based on an across-the-board methodology.

On April 14, the IURC held a hearing on the matter. On May 2, the IURC issued its order on the ECR Petition, approving the 12 CP rate allocation methodology. On May 22, the Industrial Group filed a Petition for Reconsideration, arguing the IURC's decision violated 170 IAC 4-6-15, and the 12 CP rate allocation methodology discriminated against those customers who deducted a portion of their charges based on their willingness to have their service interrupted when the system is at peak usage. On August 15, the IURC denied

3

the petition, finding the Industrial Group was precluded from arguing a violation of 170 IAC 4-6-15, and the IURC's earlier decision sufficiently addressed the discrimination issue. This appeal ensued.

## DISCUSSION AND DECISION

When reviewing administrative decisions:

Our review . . . is limited to whether the agency based its decision on substantial evidence, whether the agency's decision was arbitrary and capricious, and whether it was contrary to any constitutional, statutory, or legal principle. *PSI Energy, Inc. v. Indiana Office of Utility Consumer Counsel*, 764 N.E.2d 769, 774 (Ind. Ct. App. 2002), *trans. denied*. We are not allowed to conduct a trial *de novo*, but rather, we defer to an agency's fact-finding, so long as its findings are supported by substantial evidence. *Id*.

The first stage of our review examines whether the agency's "decision contain[s] specific findings on all of the factual determinations material to its ultimate conclusions," which is especially important when the agency's decision is a rate order. *Id*. Basic findings of fact are important because they enlighten us as to the agency's "reasoning process and subtle policy judgments" and allow for "a rational and informed basis for review," which lessens the likelihood that we would substitute our "judgment on complex evidentiary issues and policy determinations" better decided by an agency with technical expertise. *Id*. Requiring an agency to set forth basic findings also assists the agency "in avoiding arbitrary or ill-considered action." *Id*.

The second stage of the review process examines whether there is substantial evidence in the record to support the agency's basic findings of fact. *Id*. To determine whether there was substantial evidence sufficient to support the agency's determination, we must consider all evidence, including that evidence supporting the determination as well as evidence in opposition to it. *Id*. We may set aside agency findings of fact only when we determine, after a review of the entire record, that the agency's decision clearly "lacks a reasonably sound basis of evidentiary support." *Id*.

Additionally, however, it is well established that the substantial evidence test cannot be utilized to analyze the reasonableness of the conclusions of ultimate fact inferred by an agency from its findings of basic fact. *Id*. Therefore, even though an agency's findings of fact may represent inferences drawn by the agency and thus not be susceptible to scrutiny for evidentiary support, the reasonableness of the agency's inferences is an appropriate judicial determination. *Id*. Moreover, any agency determination

4

that is not in accordance with the law may be set aside because we owe no deference to an agency's conclusions of law. *Id.*

*Citizens Action Coal. of Ind., Inc., v. N. Ind. Pub. Serv. Co*., 804 N.E.2d 289, 294 (Ind. Ct. App. 2004). Additionally, "[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless the interpretation would be inconsistent with the statute itself." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000).

The Indiana Administrative Code section regarding the ratemaking treatment of QCPCs states, "A utility's jurisdictional revenue requirement that results from the ratemaking treatment of qualified pollution control property under construction under this rule (170 IAC 4-6) shall be allocated among the utility's customer classes in accordance with the allocation parameters established by the commission in the utility's last general rate case." 170 IAC 4-6-15. The Industrial Group argues the IURC was required to use the "last general rate increase," pursuant to 170 IAC 4-6-15, to determine the rates in ECR Petition for the ECRM and EERM from QCPCs under construction. We disagree.

In addressing the method by which it determined the appropriate rates for ECRM and EERM from QCPCs under construction, the IURC found:

> The 2011 Settlement and 2011 Rate Order specifically left open the question of the appropriate allocation method for NIPSCO's ECRM and EERM factors. Accordingly 170 IAC 4-6-15 provides no guidance with respect to the allocation ordered in Cause No. 43969 given the express language in the 2011 Rate Order that the allocation of QPCP would be determined based upon proposals presented in this Cause. Further, we do not believe that the negotiated revenue allocations that formed the basis of the 2011 Settlement should be applied to allocation of the ECRM revenue requirement in a contested case.

5

Instead we find that our Order in Cause No. 43526 [is] instructive. In that Cause, we determined that the 12 CP allocation was appropriate, and ordered NIPSCO to design its rates using that allocation. While rates under Cause No. 43526 never became effective, we should not ignore our allocation determination from less than two years ago. We note that the Commission did consider the P&A methodology in Cause No. 43526, and did not approve its use in that Cause, and we do not do so here.

(Industrial Group App. at 13.) The order regarding the 2011 Settlement stated:

The Settlement is silent as to the allocation of costs in the ECRM and EERM and the Settlement does not preclude the Commission from deciding the proper allocation in a subsequent proceeding. Therefore, for purposes of its compliance filing in this proceeding, NIPSCO should allocate costs from the ECRM and EERM consistent with the way it is currently allocating them, and the Commission finds that in its first ECRM and EERM following issuance of this Order (to be filed in February 2012) NIPSCO shall propose an allocation methodology, which all parties are free to contest.

*In re NIPSCO*, Cause No. 43969 at 66.

The statement leaving the determination of the ECRM and EERM rates open to proposal suggests the IURC did not intend to strictly comply with 170 IAC 4-6-15, which requires the ECRM and EERM rates to be based on the allocation method used in the last general rate increase. We have found strict compliance with 170 IAC 4-6-15 illogical when that compliance results in an inaccurate allocation of costs amongst customer classes. *Citizens Action*, 804 N.E.2d at 304. *See also Robinson v. Gazvoda*, 783 N.E.2d 1245, 1250 (Ind.Ct.App.2003) (instead of requiring an inaccurate allocation of costs amongst consumer classes, we prefer to look to the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience; in so doing, we consider the objects and purposes of the statute, as well as the effects and

6

consequences of such an interpretation), *trans. denied*.

As the Industrial Group agreed to the settlement, it cannot now complain there is error. *See Stolberg v. Stolberg*, 538 N.E.2d 1, 5 (Ind. Ct. App. 1989) (appellant precluded from complaining of error in settlement agreement to which she acquiesced). Because the Industrial Group agreed to such a deviation as part of its ratification of the 2011 Settlement, it therefore, is precluded from complaining that the IURC deviated from 170 IAC 4-6-15 in its order setting the rates for ECRM and EERM factors for QCPCs under construction.[1] Accordingly, we cannot find error in the IURC's failure to follow 170 IAC 4-6-15, and we affirm the IURC's decision.[2]

Affirmed.

ROBB, C.J., and PYLE, J., concur.

---

[1] The Industrial Group also argues the IURC erred when it determined, in its order denying the Industrial Group's Petition for Reconsideration, that the Industrial Group was precluded from arguing the IURC violated 170 IAC 4-6-15 because it did not object to the methodology prescribed by the IURC in the 2011 Settlement Order. As we come to the same conclusion, we find no error.

[2] The Industrial Group also argues the IURC discriminated against its "interruptible" customers by failing to allow for the deduction of their times of interrupted service as part of the approved 12 CP rate allocation. Ind. Code § 8-1-2-4 requires a public utility "avoid discrimination in rates between classes of customers[.]" However, we have recognized the ratemaking statutes do not "prohibit differing rates for differing classes or types of service . . . The charging of different rates for service rendered under different conditions and under different circumstances is not unlawful or unduly preferential." *Capital Improvement Mgrs. of Marion Cty. v. Pub. Serv. Comm'n*, 176 Ind. App. 240, 263, 375 N.E.2d 616, 633 (1978). As there was evidence to support the IURC's decision to exclude from its order any special consideration of the "interruptible" customers, we cannot say the act of doing so was discriminatory. *See Citizens Action*, 804 N.E.2d at 294 (we will not reverse if the IURC's decision is supported by substantial evidence).